PER CURIAM.
“The Court is unanimously of opinion, that the falsely passing as a true note, a false and forged note purporting to be a note on the Bank of the Ohio Exporting and Importing Company, and purporting to be signed, and payable as in the Indictment is set forth, and procuring the goods and other property in the Indictment mentioned • for the said false and forged note, when no such Bank or Company ever existed, either chartered, or un-chartered, is not such an offence as can be prosecuted under the Act intituled, “An Act against those who counterfeit letters or privy tokens, to receive money, or goods in other men’s names,” passed November 18th, 1789.
And the Court is further unanimously of opinion, that the offence of falsely procuring the goods, &c. of other *men, by means of a false and counterfeit note, such as is set forth in the Indictment, knowing the same to be false and counterfeit, is indictable as a cheat at Common Daw, but that judgment cannot be rendered against the Defendant in this Case, because the Indictment doth not expressly aver that the said Defendant knew that the said note was a false and fraudulent note.”
Note (In edition of 1853): — That this offence does not come within the Statute concerning- privy tokens, seems apparent from the words of the Act itself. The false token is understood to he some real visible mark, or thing, such as a key, a ring, &c. presented by the prisoner, as coming from a third verson by which the person defrauded is de *139 ceived; so the counterfeit letter is in the name of a third person. 2 East. Or. Law, p. 832 ; 76. p. 689; 3 Ghitty’s Grim. Law, 997. In this Case the Bank note, !>y colonr and means of 'which, the cheat is charged to have been effected, was not presented as coming from a third person, but was offered in a course of trade, by the prisoner to the merchant, and so does not come within the Statute.
The Court were of opinion that this was a Cheat indictable at Common Law. The distinction between such cheats as are, and such as are not indictable, is well drawn in the leading Case of Rex v. Wheatly, 2 Burrow, 1125. See also, Salkeld, 379, The Queen v. Jones. Where the unfair dealing operates as an injury to an individual only, against which ordinary caution and prudence may guard, a civil action only lies; but if the fraud be effected by such means as are calculated to deceive numbers, it is indictable. Thus the use of false weights and measures, or other false tokens, or if there be a conspiracy, the offence is public. So it has been decided that the deceitfully obtaining a sum of money by means of a counterfeit endorsement is indictable as a cheat at Common Law, the same being a false token; so of a counterfeit order. See Hale’s Case, and Fawcett’s Case, quoted 2 East’s Crown Law, 825-6.
By these authorities this Case was decided. A great deal of the trade of the country is carried on by means of Bank notes. The goods were here fraudulently obtained by means of a forged Bank note: the paper on the face of it appeared tobe one issued by a subsisting Company, to be signed by a President, and countersigned by a Cashier: it was calculated, in the course of trade, to deceive numbers; it was a false token by which the public was affected. It was, therefore, an indictable offence.
In Lara’s Case, 2 Leigh, 652, it was decided that if a person under a false pretence of purchasing Lottery Tickets, draws a Cheque on a Banker, with whom he has no cash, this is not indictable at Common Law; for this is no false token,, but merely a false assertion, or bare naked lie. Lord Kenyon said, that the drawing of the Cheque left his credit exactly as it was before, and therefore it cannot be called a false token: and Lawrence, J., said, that the draft was nothing more than the Defendant’s false assertion. But in this Case, the forged note was deemed to be strictly a false token, and therefore- Lara's Case did not apply. The use of this false token, constituted one of the ingredients of a cheat indictable at Common Law, but as it was not presented as coming from a third person, it was not embraced by the Statute.
That the scienter was necessary to be averred and proved, requires no remark.
On the doctrine of cheats at Common Law, and by Statute, see a full and able Treatise in 2 East’s Grown Law, 816, 839.
A Statute against those who cheat by means of false pretences, similar to that of 30 Geo. 2, ch. 24, (as amended by the 52 Geo. 3, ch. 64,) seems to be much wanting in Virginia, as was once proved in the Superior Court of Henrico. That was the Case of one James A. JPorter, who went to the house of an ignorant old woman, and falsely pretended that he was a Collector of the Public Taxes, and that in the execution of his said pretended Office he had come to collect her taxes, and by such fraudulent pretence he obtained from her twelve dollars. He was indicted for it, and the jury assessed his fine to five hundred dollars, but as it was not alleged in the Indictment that the cheat was effected by any false token, nor by means of a conspiracy between the Defendant, and others, the judgment was arrested.
Since this decision of the General Court, the Revised Act concerning Forgeries has passed, by which it is enacted, that the Forgery of “any note purporting to be the note of a Banking Company, when there is no such Banking Company in existence,” and the uttering such note, knowing it to be forged, shall be adj udged to be Felony, and punished as such. 1 Bev. Gode of 1819, ch. 154, § 1.